HAWTHORNE, Justice.
 

 In this case the First Circuit Court of Appeal amended a judgment of the district court so as to award to the plaintiff, Cleven Fruge, compensation for total and permanent disability and to assess the defendant, Pacific Employers Insurance Company, with'the penalties provided'in R.S. 22:658, as amended by Act No. 417 of 1952. See La.App., 71 So.2d 625. The defendant applied for a writ of certiorari or review, and we granted the writ to review the judgment only'insofar as it assessed penalties and attorney’s fees. The application for a writ was denied in all other respects.
 

 On June 24, 1951, plaintiff’s foot was injured by a piece of heavy iron pipe while he was employed as a roughneck in a drilling crew. The defendant, as the workmen’s compensation insurer of plaintiff’s employer, promptly began the payment of workmen’s compensation and paid all of the plaintiff’s medical expenses. This payment of compensation to plaintiff was discontinued on January 1, 1952. On April 9, 1952, plaintiff instituted this suit alleging that he was totally and permanently disabled as a result of his injury and praying for compensation accordingly. After institution of suit the payment of compensation was resumed by agreement of counsel, and all past due compensation was paid. About this time plaintiff was admitted to the Foundation Hospital in New Orleans. On October 30, 1952, one of the doctors of that institution submitted to the attorneys for the defendant insurance company a supplemental report, the pertinent part of which read:
 

 “ * * * We feel that the disability quoted in our last report on this patient is of permanent nature and since it has been a year and half since his injury we do not expect improvement to take place. In addition to subjective complaints this patient does have objective evidence of disability consisting of valgus of the foot on weight bearing and tenderness about the great toe which causes the patient to walk on the
 
 *533
 
 outer side of his foot. I believe this patient could return to work of a type that did not require an excessive amount of standing or walking and it is very problematical whether an appreciable amount of improvement in this patient’s ability to work will result in the future. * * * ”
 

 Thereafter at defendant’s request plaintiff was reexamined by Dr. Moss Banner-man, of Baton Rouge. On March 4, 1953, as a result of this examination Dr. Banner-man made a written report to one of defendant’s attorneys in which he explained that the patient had been seen by him in November of 1951, and went on to say!
 

 “ * * * This patient has made no progress over the past eighteen months since his injury and to my mind shows no particular change as compared to the last examination. It is my belief that he has an injury to the joint in view of his lack of improvement. * * * On the basis of the present examination it is felt that he has a disability of approximately twenty per cent of the use of the foot and that this is sufficient to prevent him from doing excessive walking. * * * ”
 

 Dr. Bannerman concluded by recommending surgery on the foot and stated that, if the operation were successful, the patient should be able to return to work six months after the date of surgery, or perhaps sooner.
 

 Twenty-six days later, on March 30, 1953, the defendant again discontinued compensation payments to the plaintiff. The suit instituted by plaintiff went on to trial, and the lower court awarded plaintiff compensation for partial disability. The Court of Appeal awarded him compensation for total permanent disability and assessed defendant with penalties and attorney’s fees.
 

 Defendant-relator correctly stated in its, application for a writ to this court that the only issue raised in regard to compensation in the trial court or in the Court of Appeal was whether plaintiff was partially or totally disabled within the meaning of the Louisiana Workmen’s Compensation Act. The medical reports made to defendant by defendant’s doctors showed that there was no doubt that plaintiff was at least partially disabled. Despite the fact that these reports showed partial disability and that there was no medical testimony to the contrary, defendant on March 30, 1953, again stopped making compensation payments to plaintiff and refused to pay him any compensation whatever.
 

 We can concede that defendant may have been in, good faith in refusing to pay plaintiff compensation for total and permanent disability on the ground that there existed a bona fide dispute between them as to whether compensation was due for such disability. However, there existed no bona fide dispute between them as to plaintiff’s partial disability, and thus defendant could not have been in good faith when it discontinued all compensation payments on March 30, 1953. In view of the fact that the dis
 
 *535
 
 pute between plaintiff and defendant was merely over the extent of plaintiff’s disability, there was no justification for this discontinuance of all compensation on March 30, 1953, and we, like the Court of Appeal, can only conclude that defendant’s failure to pay compensation was arbitrary, capricious, and without probable cause, and that defendant is therefore subject to the penalties provided in R.S. 22:658, as amended by Act No. 417 of 1952.
 

 If instead of cutting off all compensation payments the defendant had tendered to the plaintiff an amount which it thought to be due for partial disability, our decision in this case might be different. The defendant, however, did not offer plaintiff any compensation whatever and thus forced plaintiff to litigate although the defendant knew from the medical reports in its possession that compensation was due for at least partial disability.
 

 In our opinion the facts of this case bring it squarely within the holding of this court in Wright v. National Surety Corporation, 221 La. 486, 59 So.2d 695, 698, in which penalties and attorney’s fees were allowed. In the Wright case this court said:
 

 “The only defense of the insurance company, according to its pleadings and the brief of its counsel both here and in the Court of Appeal, is that it was fully justified in refusing to pay further compensation after April 18, 1948. However, no evidence was offered to support this position, and no effort was ever made to explain the summary stoppage of
 
 all
 
 compensation payments despite the unanimous medical testimony showing that the insurer was well aware at that time that plaintiff was still
 
 partially, if not totally, disabled.
 
 Obviously, the discontinuance was indefensible.” (Italics ours.)
 

 In this court plaintiff-respondent has filed a document in which he asks that the judgment of the Court of Appeal be amended to award him $1,000 attorney’s fees instead of $500 and to compute the penalties of 12 per cent on all installments past due and unpaid for more than 60 days following January 1, 1952, instead of March 30, 1953. The judgment of the Court of Appeal was rendered on March 22, 1954, and plaintiff-respondent made no timely application to this court for a writ of certiorari. Consequently the award of the Court of Appeal cannot be amended or disturbed to the detriment of defendant-relator. Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739, and authorities therein cited.
 

 For the reasons assigned the judgment of the Court of Appeal, First Circuit, is affirmed at relator’s cost.
 

 HAMITER, J., concurs in the decree.